IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MICHELE MARIE MAIXNER,                                    Civ. No. 10-3037-CL

             Plaintiff,

                               REPORT & RECOMMENDATION

     v.

BAC HOME LOANS SERVICING, LP;
MORTGATE ELECTRONIC REGISTRATION
SYSTEMS, INC.; RECONTRUST COMPANY,
N.A.; GATEWAY BUSINESS BANK d/b/a
MISSION HILLS MORTGAGE BANKERS, a
California corporation; FIRST AMERICAN TITLE
INSURANCE COMPANY OF OREGON, an
Oregon corporation, individually and as agent;
JOHN and JANE DOES 1-100,

             Defendants.

_____

CLARKE, Magistrate Judge.

     This matter comes before the court on motions to dismiss filed by defendants BAC Home

Loans Servicing LP ("BAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and

ReconTrust Company, N.A. ("ReconTrust") (collectively, "the Bank of America defendants")

(#51); Gateway Business Bank d/b/a Mission Hills Mortgage Bankers ("Gateway") (#53); and

First American Title Insurance Company of Oregon ("First American") (#60). For the reasons

stated below, defendants' motions should be GRANTED and plaintiff's claims should be

DISMISSED WITH PREJUDICE.

**BACKGROUND**

The dispute in this case concerns real property located at 1337 Annabelle Lane in Grants Pass, Oregon ("the Annabelle Lane property"). *Pro se* plaintiffs Gary Earl Maixner and Michele Marie Maixner commenced this action on April 30, 2010, by filing a thirty-five page Complaint (#1) seeking an order holding the mortgage on their property to be void and unenforceable, the pending non-judicial foreclosure proceeding unlawful, and seeking damages for violations of, among others, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Truth in Lending Act ("TILA") 15 U.S.C. § 1601 *et seq.* On November 18, 2010, this court recommended (#40) plaintiffs' complaint be dismissed as to all defendants. On March 3, 2011, Judge Panner adopted this court's recommendation and ordered (#44) plaintiffs' RICO and TILA claims dismissed with prejudice, the remainder of plaintiffs' claims dismissed without prejudice, and granted plaintiffs 30 days to file an amended complaint. On May 27, 2011, plaintiff Michele Marie Maixner[1] ("Maixner") filed her Amended Complaint (#50) alleging three claims under RICO as well as claims for common law fraud, constructive fraud, conspiracy, and quiet title.

Maixner's Amended Complaint consists of 26 typewritten pages and six exhibits (Exhibits D through I) totaling 58 pages. She incorporates by reference two exhibits (Exhibits A and B) totaling 17 pages previously filed with the original Complaint. The Amended Complaint blends factual allegation with citations to case law, statutes, and extended quotations from a

---

[1] The Amended Complaint's caption shows the plaintiffs as "Gary Earl (deceased) and **Michele Marie** [Family: Maixner], *in esse*." (Emphasis in original). The Amended Complaint alleges that Gary Earl Maixner is plaintiff Michele Marie Maixner's deceased husband who signed the promissory note and deed of trust at issue in this case. (Am. Compl., ¶ 1). He is not named as a party. (Am. Compl., ¶ 27). No claims are made on his behalf. Gary Earl Maixner is thus not a real party in interest and should be dismissed. FED. R. CIV. P. 17(a).

document titled "Securitization Research Commentary," submitted as Exhibit I. The identifiable factual allegations are as follows:

On or about January 6, 2006, Maixner and her now deceased husband ("the Maixners") used their home to secure a $217,963 mortgage loan from Gateway, evidenced by a promissory Note and secured by a Deed of Trust ("DOT"). (Am. Compl., ¶ 1 & Exs. A, B). Maixner alleges Gateway did not use its own money to fund the loan and therefore is a "sham lender." (Id., ¶ 48). The Note identifies Gateway as the lender and acknowledges that Gateway "or anyone who takes this Note by transfer is entitled to receive payments under this Note" in monthly installments beginning March 1, 2006. (Id., ¶ 1 & Ex. A). The DOT securing the Note was recorded January 12, 2006, in the official records of Josephine County as document number 2006-000829. (Id., ¶ 1 & Ex. B). It identifies the "Lender" as Gateway, the "Trustee" as First American, and MERS as the beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns." (Id., Ex. B at 1). The DOT explicitly provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to [the Maixners]," and that the Maixners would receive notice if the entity charged with collecting payment on their loan changed, whether or not related to the sale of the Note. (Id. at 9, ¶ 19).

In March of 2006, the Maixners received notification that their mortgage loan would be serviced by Countrywide Home Loans Servicing, LP ("Countrywide"), and that all future payments should be made to Countrywide. (Id., ¶ 2). The Maixners made payments to Gateway and BAC from March 2006 until November 2008. (Id., ¶ 55). Maixner identifies BAC as "BAC Home Loans Servicing, f/k/a Countrywide Home Loans Servicing, LP." (Id., ¶ 28). The court takes judicial notice that on July 1, 2008, Bank of America, N.A., acquired Countrywide as part of its purchase of Countrywide Financial Corporation. (*See* Press Release, Bank of Am. Corp.,

Bank of America Completes Countrywide Financial Purchase (July 1, 2008), *available at*
http://mediaroom.bankofamerica.com/phoenix.zhtml?c=234503&p=irol-
newsArticle&ID=1390089&highlight=). Countrywide was subsequently rebranded as BAC in
2009. (*See* Bank of Am. Corp., Merger History, http://message.bankofamerica.com/heritage/#
/merger-history/country-financial).

Maixner alleges that the her mortgage loan has been "sold, re-sold, transferred,
securitized, pooled in investment tranches, or otherwise assigned in the mortgage derivatives
financial markets" without notice or disclosure to the Maixners. (Id., ¶¶ 39, 59). She
specifically alleges that her mortgage loan is part of a "securitized mortgage pool" covered by a
Sale and Service Agreement ("SSA") dated March 1, 2006. (Id., ¶ 11 & Ex. H (hereinafter,
"SSA")). Under the terms of the SSA, CWABS, Inc., acquired certain mortgage loans from GSC
Capital Corp. QRS Delaware Loan Holdings, Inc. ("GSC Delaware"), then immediately sold
those mortgage loans to GSC Capital Corp. Mortgage Trust 2006-1 ("GSC Mortgage Trust") and
deposited the files for those loans with the "indenture trustee," identified as the Bank of New
York ("BONY"). (SSA, Preliminary Statement & § 2.01(a)).[2] The SSA identifies Countrywide
as the "master servicer" and charges Countrywide with servicing and administering the mortgage
loans "in accordance with customary and usual standards of practice of prudent mortgage loan
lenders." (Id. at 24, § 3.01). Countrywide's obligations include collecting payments on the
mortgage loans, (id. at 28, § 3.05(a)), and effectuating foreclosure proceedings, (id. at 35, §
3.11).

Maixner further alleges that the "securitized mortgage pool" covered by the SSA is
subject to the terms of an Indenture dated March 22, 2006, executed by GSC Mortgage Trust as

[2] *Available at*
http://www.sec.gov/Archives/edgar/data/1355713/000088237706001211/d445140.htm

the "issuing entity" and BONY as "indenture trustee." (Id., ¶ 10 & Ex. G). Under the terms of this Indenture, GSC grants to BONY as trustee certain "collateral," also described as the "Trust Estate," including all of its "right, title and interest in and to whether now or hereafter created by (a) the Mortgage Loans, Replacement Mortgage Loans, and the proceeds thereto and all rights under the related documents" for the purpose of "secur[ing] the payment of principal of and interest on" the Notes described in Article II of the Indenture. (Id., Ex. G at 4 (hereinafter "Indenture")).³

On August 31, 2009, an assignment of deed of trust was recorded in the official records of Josephine County as document number 2009-014051 in which MERS "as Beneficiary" assigned all beneficial interest in the January 2006 DOT to BAC Home Loans Servicing, f/k/a Countrywide Home Loans Servicing, LP. (Id., ¶ 3 & Ex. D). Maixner alleges neither MERS nor BAC "advanced any funds whatsoever" to either fund or acquire the 2006 mortgage loan, therefore neither MERS nor BAC will suffer any financial loss due to non-payment of the loan. (Id., ¶ 7). She further alleges that MERS and BAC "have no record of any payments from third parties pursuant to the securitization documents" and therefore are incapable of accurately determining whether there is an outstanding balance on the 2006 mortgage loan. (Id.).

On September 5, 2009, the Maixners received a three-page document titled "Trustee's Notice of Sale" dated September 2, 2009, signed by "Team Member" Laura Martin, with a blank notary certificate attached. (Id., Ex. E). ReconTrust has advertised the non-judicial foreclosure sale of the Annabelle Lane Property several times, but each time has postponed the sale at its discretion. (Id., ¶ 62).

---

³ *Available at*

http://www.sec.gov/Archives/edgar/data/1355713/000088237706001211/d445153_ex4-1.htm

Maixner also offers as fact extended excerpts from a "Securitization Research Commentary" ("SRC") obtained through LuminaQ and authored by Neil Garfield, an attorney licensed to practice in Florida who Maixner asserts is a "nationally recognized expert in mortgage securitization." (Id., ¶¶ 14-22 & Ex. I). A review of the SRC reveals that this document consists primarily of a general commentary regarding the practice of mortgage securitization accompanied by Garfield's opinion "as an expert in securitization" regarding the significance of these practices with respect to the Maixners' mortgage loan, not of which are properly offered as fact. To the extent Maixner relies on and refers to the SRC in her Amended Complaint, the court deems those references to be legal arguments and considers them accordingly in the discussion section below.

## STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, -- U.S. --, --, 129 S.Ct. 1937, 1949 (2009). While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 544, 555.

The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See* Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974), *overruled on other grounds by*

Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012 (1984). In answering this question, the court must assume that the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *See* Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citation and quotation marks omitted).

Furthermore, a complaint which includes allegations of fraud is subject to the heightened pleading requirements of Rule 9(b), which requires more specificity including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal citation and quotation marks omitted).

"Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (*citing* Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972)). Where a plaintiff is proceeding pro se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *See* Bernhardt v. Los Angeles Cnty., 339 F.3d 920, 925 (9th Cir. 2003) (internal citations omitted). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir.1982).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (*quoting* Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)).

## DISCUSSION

Gateway, First American, and the Bank of America defendants move to dismiss pursuant to Rule 12(b)(6) on grounds that Maixner's Amended Complaint fails to allege sufficient facts to state a plausible claim for relief. Gateway further argues that Maixner's fraud claims are insufficiently pled under Rule 9(b). For the following reasons, the motions to dismiss should be granted and Maixner's Amended Complaint should be dismissed with prejudice.

### I.    RICO Claims

Maixner's first three claims are barred by the doctrine of claim preclusion. "Res judicata encompasses the doctrines of claim preclusion and issue preclusion." Paulo v. Holder, —— F.3d ——, 2011 WL 1663572, at \*5 (9th Cir. 2011) (*citing* Taylor v. Sturgell, 533 U.S. 880, 892 & n. 5, 128 S.Ct. 2161(2008)). "[C]laim preclusion, prohibits lawsuits on any claims that were raised or could have been raised in a prior action . . . [and] applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002) (citations and internal quotation marks omitted).

Here, there is identity of parties: BAC, ReconTrust, MERS, Gateway, and First American are all named as defendants both in the original Complaint (#1) and Maixner's Amended Complaint (#50). There is identity of claims: RICO claims stated in Maixner's Amended Complaint arise out of the same transactional nucleus of facts, rely on the same predicate facts, and allege violations derivative of or identical to the claims asserted in the original Complaint. There is a final judgment on the merits: the court granted a motion to dismiss Maixner's original complaint and the RICO claims asserted therein were dismissed with prejudice. Stewart, 297 F.3d at 956 (final judgment on the merits used interchangeably with dismissal with prejudice); FED. R. CIV. P. 41(b) ("Unless the court in its order for dismissal otherwise specifies, a dismissal . . . other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.")

Accordingly, the first three claims asserted in Maixner's Amended Complaint are dismissed under the doctrine of claim preclusion.

## II. Common Law Fraud

Maixner's fourth cause of action alleges common law fraud against defendants Gateway and BAC only. She alleges Gateway and BAC "made several false statements and/or omissions of material fact" with respect to the 2006 mortgage loan by (1) failing to provide a complete accounting of payments received, (2) concealing payments received from third parties, and (3) concealing that they lacked any legal or contractual authority to collect payment. It appears that Maixner bases her fraud claim on her belief that her obligation to repay her mortgage loan has been extinguished or otherwise altered in some fundamental way as a result of her mortgage loan being sold into the secondary mortgage market and securitized. (Am. Compl. ¶¶ 12, 42-43).

//

### Standard

Under Oregon law, the elements of a fraud claim are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) intent that the recipient act on it in a manner reasonably contemplated; (6) the recipient's ignorance of its falsity; (7) reliance on its truth; (8) the recipient's right to rely on it; and (9) consequent and proximate injury. Or. Pub. Employees' Ret. Bd. v. Simat, Helliesen & Eichner, 191 Or. App. 408, 423-24, 83 P.3d 350 (2004) (*citing* Conzelmann v. Nw. Poultry & Dairy Prod. Co., 190 Or. 332, 350, 225 P.2d 757 (1950)). Silence or nondisclosure may result in an actionable claim for fraud. Wieber v. FedEx Ground Package Sys., Inc., 231 Or. App. 469, 484, 220 P.3d 68 (2009) (internal citation omitted); Ogan v. Ellison, 297 Or. 25, 34, 682 P.2d 760 (1984). Where a plaintiff pleads fraud based on silence or nondisclosure, she must demonstrate that the defendant either (1) remained silent when they had a duty to speak, or (2) assumed the obligation to make a full and fair disclosure of the whole truth by making a representation in the nature of a "half-truth." Gregory v. Novak, 121 Or. App. 651, 654-55, 855 P.2d 1142 (1993).

### A. Statute of Limitations

Gateway argues Maixner's common law fraud claim is time barred and must be dismissed. Under Oregon law, claims for common law fraud are subject to a two-year statute of limitations. Nudo v. McNeil, 702 F. Supp. 825, 827 (D.Or. 1988). The statute of limitations begins to run on the date the plaintiff discovers the fraud or deceit. OR. REV. STAT. § 12.110(1); Cole v. Sunnyside Marketplace, LLC, 212 Or. App. 509, 515, 160 P.3d 1 (2007) (internal citation omitted). "A fraud is discovered when a plaintiff learns either of the misrepresentation itself or of facts sufficient to 'excite attention and put [the plaintiff on] guard or call for an inquiry,' if reasonably inquiry would then reveal the fraud." Bodunov v. Kutsev, 214 Or. App,

356, 359, 164 P.3d 1212 (2007) (internal citation omitted). "To be dismissed as untimely, the complaint must reveal the untimeliness on its face." Id. (internal citation omitted).

Maixner alleges she did not learn of the circumstances giving rise to her fraud claim until 2010 and reasonably could not have known of the fraud earlier, therefore this discovery should trigger the limitations period. The Maixners initiated this action in April 2010, well within two years of the alleged discovery. The Amended Complaint is timely on its face, and need not be dismissed as untimely at this stage of the litigation.

## B. The facts alleged establish that Gateway and BAC had the authority to demand and collect payment

Maixner's claim that Gateway and BAC lacked the authority to collect payments on the 2006 mortgage loan is implausible on its face. Maixner's own factual allegations and exhibits establish that (1) under the terms of the Note, Gateway and any lender who took the Note by transfer was entitled to monthly payments on the Maixners' mortgage loan; (2) under the terms of the DOT, Gateway was entitled to sell the Note in whole or in part, along with the DOT, to another lender without first notifying the Maixners; (3) if such a sale resulted in a change to the entity charged with collecting the payments on their loan, the Maixners would be notified; (4) in March 2006, Gateway sold the Maixners' mortgage loan into the secondary market; (5) the Maixner's mortgage loan was pooled with other mortgages and used as collateral for certain asset backed securities under the terms of an SSA which assigned the servicing rights to all of the loans in the pool to Countrywide; (6) in March 2006 the Maixners were notified that Countrywide would be servicing their loan and to make all future payments to Countrywide; (6) thereafter, the Maixners made their payments to Countrywide; (7) Countrywide was rebranded as BAC in 2009; and (9) in August 2009, an assignment was recorded transferring all beneficial interest in the Maixners' loan to BAC.

With respect to Gateway, these facts establish that Gateway had both a legal and a contractual right to demand payment on the Maixners' loan until the loan was sold to another lender, and made no demand for payment after selling the loan in March of 2006. With respect to BAC, these facts establish that another lender bought the Maixner's mortgage loan and thereby acquired Gateway's legal and contractual right to payment under the terms of the Note, that this lender assigned its right to demand and collect payment to BAC, and that the Maixners received the proper notice of the change in the entity servicing their loan. On these facts, Maixner's claim that Gateway and BAC fraudulently concealed that they had no legal or contractual authority to collect payment on the Maixners' loan is implausible on its face and must therefore be dismissed.

### C. Maixner's fraudulent concealment claims are otherwise insufficiently pled under Rule 9(b)

Maixner claims that Gateway and BAC "made several false statements and/or omissions of material fact" with respect to the 2006 mortgage loan by (1) failing to provide a complete accounting of payments received, and (2) concealing payments received from third parties. These claims are insufficiently pled under Rule 9(b) and must be dismissed.

With respect to the "failure to account" claim, Maixner does not allege that she requested an accounting of payments from either Gateway or BAC. If Maixner requested an accounting, she must identify whether that request was directed to Gateway, BAC, or both; the date on which the request was made; and explain why the content of the accounting received was false or misleading. In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (plaintiff must explain why a statement or omission is false or misleading by identifying what is false or misleading and why it is false or misleading), *superseded by statute on other grounds as stated in* Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F. Supp 1297 (C.D.Cal. 1997).

If she did not request an accounting, she allege sufficient facts to demonstrate that Gateway and

BAC had a duty to provide an accounting and identify which of them failed to do so. Gregory,

121 Or. App. at, 654-55.

Maixner's "concealed payments" claim is similarly deficient. First, she fails to identify

whether Gateway, BAC, or both, received payments from third parties and thus fails to

sufficiently plead "who" this claim is alleged against. Swartz v. KPMG LLP, 476 F.3d 756,

764-65 (9th Cir.2007) (in a fraud action involving multiple defendants, "a plaintiff must, at a

minimum identify the role of each defendant in the alleged fraudulent scheme") (internal

citations, quotation marks, and alterations omitted). Second, Maixner fails to plead any facts that

demonstrate that either Gateway or BAC actually received any payments from a third party,

therefore this allegation is wholly conclusory and the court is not required to accept it as true.

Moreover, Maixner affirmatively alleges that BAC has "no record of any payments from third

parties." (Am. Compl., ¶ 7). The claim that BAC concealed payments is therefore implausible

on its face.

Third, Maixner refers only vaguely to the span of time that the Maixners made

payments on their loan, March 2006 through November 2008, thus she fails to sufficiently plead

"when" the allegedly fraudulent misrepresentation occurred. *See generally* Grant v. Aurora Loan

Servs., Inc., 736 F. Supp. 2d 1257, 1273-74 (C.D. Cal. 2010) (collecting cases); *see also* Atl.

Richfield Co. v. Ramirez, 176 F.3d 481 (9th Cir. 1999) (unpublished opinion) (allegation that

misrepresentation occurred in late 1990 or early 1991 merely identified a period spanning several

months did not adequately identify the time of the misrepresentations). Fourth, Maixner fails to

identify whether the defendant who allegedly received these third party payments simply

remained silent or made representations amounting to "half-truths." She has therefore failed to

sufficiently plead "how" and "why" the mortgage statements received from Saxon and Ocwen

showing that a balance was owed and payment was due on their mortgage loan was fraudulent.

In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (plaintiff must

explain why a statement or omission is false or misleading by identifying what is false or

misleading and why it is false or misleading), *superseded by statute on other grounds as stated*

*in* Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F. Supp. 1297 (C.D.Cal. 1997).

    For the reasons stated above, Maixner has failed to allege sufficient facts to state a

plausible claim for fraud, therefore this claim must be dismissed.

### D.  Maixner lacks standing to bring claim for securities fraud

    It appears that Maixner believes she has an actionable claim for securities fraud based on

the sale and securitization of her mortgage loan.  (Am. Compl., ¶ 13).  However, even if her

mortgage loan was sold into the secondary market and securitized, her status as a mortgagee does

not qualify her as a purchaser, seller, or offeree of a security.  *See* Bello v. Chase Home Fin., No.

10vc1913 BTM (WVG), 2011 WL 133351 at * 1 (S.D.Cal. Jan. 12, 2011) (rejecting mortgagee-

plaintiff's claim that securitization of his mortgage made him a holder of MBS); Harms v.

ReconTrust Co., No. 10-01598 CW, 2010 WL 2573144 at * 2 (N.D.Cal. June 24, 2010)

(mortgagee-plaintiffs lacked standing to allege securities fraud in connection with the sale of

their mortgage on the stock market); Bukhari v. T.D. Serv. Co., No. 2:10-cv-000578-GMN-PAL,

2010 WL 2762794 at * 5 (D.Nev. July 13, 2010) (allegation that lender bundled mortgagee-

plaintiff's promissory with others and sold them to a third party insufficient to establish claim for

securities fraud).  Maixner therefore lacks standing to sue for securities fraud.  *See* Blue Chip

Stamps v. Manor Drug Stores, 421 U.S. 723, 733-34 & n. 6, 95 S.Ct. 1917 (1975) (only

purchasers and sellers have standing to bring a an action under Section 10(b) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5); <u>U.S. v. Naftalin</u>, 441 U.S. 768, 773,

99 S.Ct. 2077 (1979) (only purchasers and offerees of securities have standing to sue under

Section 17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77q(a)); <u>Bosse v. Crowell Collier &</u>

<u>Macmillan</u>, 565 F.2d 602, 610 (9th Cir. 1977). Because this lack of standing cannot be cured by

the allegation of additional facts, this claim should be dismissed with prejudice.

### Conclusion

For the reasons stated above, Maixner has failed to state a plausible claim for fraud. She

has been afforded the opportunity to amend this claim and was cautioned by the court that failure

to support the claim with specific factual allegations would result in dismissal with prejudice.

Maixner's persistent belief that her obligation to repay their mortgage loan has been extinguished

as the result of its sale and securitization is unsupported by any identifiable legal theory, and

granting leave to amend a second time to allege additional facts would be futile. The court

therefore recommends this claim be dismissed with prejudice.

### III.    Constructive Fraud

Maixner's fifth cause of action alleges constructive fraud against defendants Gateway

and BAC only. She offers two allegations in support of this claim. First, Maixner alleges that

"under Federal and State statutory law requirements, as well as common law duties, including

fiduciary duties," Gateway and BAC were obligated to disclose certain information to the

Maixners, including but not limited to "payments made to persons or entities attributable to [the

Maixners'] loan, and the other material facts set forth above." (Am. Compl., ¶ 100). Second,

she alleges Gateway and BAC "breached this duty by failing to properly disclose the agreement

to pay and/or receive illegal and improper 'kickbacks,' 'referral fees,' and yield spread premiums

by failing to properly disclose the actual payment and/or receipt of such fees, and by failing to

properly disclose the other material facts set forth above." (Id., ¶ 101). These allegations appear

to be related to her claim that Gateway was a "sham lender" who "functioned more as a

mortgage broker or finder and 'nominee' than a real lender." (Am. Compl., ¶ 48).

## A. RESPA

Based on the allegations above, it appears to the court that Maixner argues her mortgage

loan is a "table-funded" loan subject to the disclosure requirements of Section 8 of the Real

Estate Settlement Practices Act of 1974 ("RESPA"), 12 U.S.C. §§ 2607, and that Gateway

violated these disclosure requirements by failing to disclose the profits realized through the sale

and securitization of her mortgage loan.

RESPA is administered by the Department of Housing and Urban Development

("HUD").[4] The regulations promulgated by HUD for the administration of RESPA include

Regulation X, 24 C.F.R. § 3500.1, et seq., which provides, in relevant part that "[a] bona fide

transfer of a loan obligation in the secondary market is not covered by RESPA." 24 C.F.R. §

3500.5(7). In determining what constitutes a bona fide transfer, HUD considers the "real source

of funding and the real interest of the funding lender." Id. RESPA does, however, apply to

"table-funding," defined by HUD as "a settlement at which a loan is funded by contemporaneous

advance of loan funds and an assignment of the loan to the person advancing the funds." 24

C.F.R. § 3500.2(b). "A table-funded transaction is not a secondary market transaction." Id.

Maixner has not alleged any facts that support the conclusion that her mortgage loan is a

table-funded transaction. To the contrary, she affirmatively alleges that Gateway provided the

funds to finance her loan. (Am. Compl., ¶ 49). Gateway is named as the "lender" in both the

Note and DOT and thus falls squarely within HUD's definition of "lender." 24 C.F.R. § 3500.2.

---

[4] The loan at issue here is a residential mortgage loan within the scope of RESPA, therefore the
definitions promulgated by HUD applied at loan origination. *See* 12 U.S.C. § 2602(1).

Under the terms of the Note, Maixner was obligated to make payments on the loan directly to Gateway and apparently made at least one such payment. All of these facts suggest that the sale of Maixner's loan was a bona fide secondary market transaction and therefore exempt from RESPA's disclosure requirements.

Maixner appears to believe that her mortgage loan is a table-funded transaction because Gateway closed the loan in January 2006 and sold the loan in March 2006, and made the loan with the intention of selling it. While the timing of the assignment may bear some relevance to the question of whether a residential mortgage loan is table-funded, "the determinative question is who bears the risk of the transaction." Easter v. Am. W. Fin., 381 F.3d 948, 955 (9th Cir. 2004). Even if Gateway had a pre-existing agreement with another lender sell the Maixners' loan and used borrowed capital to fund the loan, this does not make Maixner's mortgage loan a "table-funded" transaction. *See* Moreno v. Summit Mortg. Corp., 364 F.3d 574, 577 (5th Cir. 2004) (loan closed by lender in its own name and funded using lender's line of credit with another bank which was sold under pre-existing agreement to third party was a bona fide secondary market transaction under Regulation X); Chandler v. Nw. Bank Minnesota, Nat. Ass'n., 137 F.3d 1053, 1054-57 (8th Cir. 1998) (RESPA inapplicable where lender closed loan in own name using funds obtained through a warehouse lender and sold the loan five days later to a purchaser under a pre-existing agreement).

For the reasons stated above, Maixner has failed to state a cognizable claim for violation of Section 2607 of RESPA.[5]  This claim must therefore be dismissed.

//

---

[5] The court notes that claims under Section 2607 are subject to a one-year statute of limitations. 12 U.S.C. § 2614. Because Maixner's RESPA claim can only arise out of the loan origination, which occurred more than three years before she filed this action, her claim is barred by the statute of limitations unless the doctrine of equitable tolling applies.

## B. Fiduciary Duty

Maixner alleges that Gateway and BAC were obligated to disclose certain undefined information about her loan as the result of fiduciary duties.  Under Oregon law, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) breach of a fiduciary duty, and (3) identifiable loss or injury as the result of the breach.  Smith v. Healy, 744 F. Supp. 2d 1112, 1126 (D.Or. 2010) (*citing* Pereira v. Thompson, 230 Or. App. 640, 654, 217 P.3d 236 (2009)).  Under Oregon law, no fiduciary duties are implied unless the parties are in a "special relationship."  Bennett v. Farmers Ins. Co. of Oregon, 332 Or. 138, 26 P.3d 785, 798 (2001).  A special relationship arises "only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf."  Id. (*citing* Conway v. Pacific Univ., 324 Or. 231, 239-40, 924 P.2d 818 (1996)); Strader v. Grange Mut. Ins. Co., 179 Or. App. 329, 39 P.3d 903, 906 (2002) (what makes a relationship special is not its name, but the roles assumed by the parties).  Generally, arms-length banking and loan transactions do not constitute a special or fiduciary relationship giving rise to a fiduciary duty.  Uptown Heights Assoc. Ltd. v. Seafirst. Corp., 320 Or. 638, 650, 891 P.2d 639 (1995) (arms-length banking and loan transactions do not constitute a special or fiduciary relationship).  To establish a fiduciary relationship, there must be some standard of care apart from those imposed by a loan agreement or contract.  Id.  Maixner fails to allege any facts supporting the conclusion that either Gateway or BAC owed her a heightened duty.  Therefore, to the extent Maixner attempts to state a claim for breach of fiduciary duty, that claim is insufficiently pled and must be dismissed.

### Conclusion

For the reasons stated above, Maixner has failed to state a plausible claim for relief.  Her claim for constructive fraud is unsupported by any identifiable legal theory.  To the extent that a

legal theory can be discerned, Maixner has failed to allege sufficient facts in support of those claims. It does not appear that these deficiencies may be cured by granting her leave to amend a second time. The court therefore recommends this claim be dismissed with prejudice.

## IV.   Conspiracy

Maixner's conspiracy claim is alleged against all defendants. The claim is based on allegations that the defendants sought to deceive the Maixners and agreed among themselves to take undefined "illegal and improver actions" in violation of "multiple Federal laws, including the FDCPA and the RICO Act" and unspecified "common law duties." (Am. Compl., ¶¶ 103-106).

In Oregon, civil conspiracy "is not a separate tort or basis for recovery but, rather, a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her co-conspirators." Osborne v. Fadden, 225 Or. App. 431, 437, 201 P.3d 278 (2009). "A civil conspiracy is a combination of two or more person by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." Id. at 436 (internal citations and quotation marks omitted). A plaintiff bringing a civil conspiracy claim must establish that (1) two or more persons (2) had a meeting of the minds (3) on an object to be accomplished or a course of action, (4) one or more unlawful overt acts in furtherance of the conspiracy, and (5) damages as the proximate result thereof. Id. at 437 (internal citations omitted).

Maixner's Amended Complaint does not allege a claim for violation of the FDCPA and her RICO claims are barred by the doctrine of claim preclusion, therefore she may not establish a claim for civil conspiracy based on alleged violations of these statutes. As described above,

Maixner has failed to plead a plausible claim for fraud and therefore may not claim conspiracy based on fraud because she has failed to establish the necessary underlying tort.

To the extent that Maixner alleges conspiracy based on the securitization of her mortgage, she fails to identify a cognizable legal basis for this claim. The practice of securitization dates back to approximately 1970, when Congress sought to generate a flow of capital from the investment community to the capital starved mortgage industry through the creation of a secondary mortgage market. *See generally* Anchor Sav. Bank, F.S.B. v. U.S., 81 Fed. Cl. 1, 15-21 (2008) (describing the origins of the secondary mortgage market and MBS). Congress created the Federal Home Loan Mortgage Corporation ("Freddie Mac") in 1968 and the Government National Mortgage Association ("Ginnie Mae") in 1970 "with the designated goal of enhancing the availability of capital to lenders through a more sophisticated secondary mortgage market relying in principal part on mortgage-backed securities to bridge the gap between the investment community and the residential mortgage market." Id. at 16. In 1981, the Federal National Mortgage Administration (FNMA or "Fannie Mae") also began issuing MBS. Id. Private entities began issuing "so-called 'private label' MBS" in 1977, and Congress encouraged and fostered these "private label" MBS through the enactment of the Secondary Mortgage Market Act of 1984 ("SMMEA"). Id. at 17-19. District courts across the nation have been presented with claims similar to the one Maixner advances, and have uniformly rejected the argument that securitization is illegal as meritless. *See* Duarte v. Bank of Am., No. 10-00372, 2011 WL 1399127, at * 7 (D.Haw. Apr. 12, 2011) (collecting cases). Nothing in the Maixners' Note or DOT prohibited the securitization of their mortgage loan. To the contrary, the DOT expressly provides that the Note could be sold in whole or in part multiple times without

imposing any restrictions, and without requiring that the Maixners be informed of the potential

securitization of their mortgage loan.

For the reasons stated above, Maixner has failed to establish the necessary underlying tort

and therefore fails state a plausible conspiracy claim.  It is clear that Maixner believes that one or

more defendants conspired to defraud her through the sale and securitization of her mortgage

loan.  However, she fails to identify a cognizable legal theory on which this claim may be

premised, and it does not appear that this deficiency may be cured by granting her leave to

amend a second time.  The court therefore recommends this claim be dismissed with prejudice.

### V.    Quiet Title

Maixner's quiet title claim is alleged against all defendants.  She alleges "on information

and belief" that any entity who was ever owed money or claims to be owed money as the result

of her mortgage loan has been paid in full through unspecified payments by unidentified third

parties.  She then asserts that since no party is owed any money, title to the Annabelle Lane

Property should rest exclusively in the Maixners free of any encumbrances.

An action to quiet title is equitable in nature.  Moon v. Moon, 140 Or. App. 402, 408, 914

P.2d 1133, *rev. denied*, 323 Or. 484, 918 P.2d 848 (1996).  "To secure a judgment quieting title,

plaintiffs must prove that they have a substantial interest in, or claim to, the disputed property

and that their title is superior to that of defendants."  Coussens v. Stevens, 200 Or. App. 165,

171, 113 P.3d 952 (2005) (internal citations omitted).  This standard does not require a plaintiff

to show that her title is above reproach, however, the plaintiff must prevail on the strength of her

own title as opposed to the weaknesses of the defendants' title.  Id. (internal citations omitted).

Maixner fails to allege sufficient facts to state a claim for relief that is plausible on its

face.  On the facts alleged, neither Gateway nor First American appear to assert any interest in

the Annabelle Lane property, therefore neither of these parties is a proper defendant to Maixner's

quiet title claim. With respect to the remaining defendants, Maixner merely asserts without

identifying any actual facts that her mortgage loan has been paid from one or more sources,

therefore nobody is owed any money on the Note and no defendant may claim any interest in the

title to the Annabelle Lane property a the result of the DOT secured by the Note. This is a

conclusory legal allegation which the court is not required to accept. Maixner has been afforded

the opportunity to amend this claim and cautioned that she must allege sufficient facts to support

her legal theory. She has failed to do so, and it appears granting her leave to amend a second

time would be futile. Therefore the court recommends this claim be dismissed with prejudice.

## RECOMMENDATION

For the reasons stated above, the motions filed by the Bank of America defendants (#51),

First American (#53), and Gateway (#60) should be GRANTED and this case should be

DISMISSED WITH PREJUDICE.

***This recommendation is not an order that is immediately appealable to the Ninth***

***Circuit Court of Appeals.*** Any notice of appeal pursuant to Federal Rule of Appellate Procedure

4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. ***Objections to this***

***Report and Recommendation, if any, are due by November 14, 2011. If objections are filed,***

***any response to the objections is due by December 1, 2011.*** *See* FED. R. CIV. P. 72, 6.

DATED this _____ day of October, 2011.

MARK D. CLARKE
United States Magistrate Judge